UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL PRESTO INDUSTRIES, INC.<br><br>Defendant. | CIVIL ACTION<br>FILE NO. 02 C 5027<br><br>JUDGE NORGLE |

DOCKETED JAN 2 6 2004

FILED JAN 2 3 2004 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**INTRODUCTION**

Defendant National Presto Industries, Inc. ("Defendant" or "National Presto") seeks a protective order for in excess of 41,000 pages of documents which it claims contain trade secrets or other confidential commercial information. Defendant's proposed protective order would, among other things, prevent the public from obtaining access to such documents and information and any judicial proceedings involving such information. It would also prohibit the Commission from using such documents for any purpose other than this litigation. Defendant's proposed protective order unduly restricts the public's right of access to this litigation and should be denied. Should the Court nonetheless determine to grant a protective order with regard to certain documents, the

proposed restrictions on the Commission's use of such information should be modified to permit the Commission to use such materials as is necessary to fulfill its agency responsibilities and serve the public interest.

## BACKGROUND

On July 16, 2002, the Commission filed its Complaint alleging that since at least 1994, Defendant has been operating as an unregistered investment company in violation of Section 7(a) of the Investment Company Act of 1940 ("Investment Company Act") [15 U.S.C. § 80a-1 et. seq.] (First Amended Complaint for Injunction and Other Relief ("Complaint"), ¶ 1). The Commission alleges that Defendant has been an investment company within the meaning of Section 3(a)(1)(A) of the Investment Company Act [15 U.S.C. § 80a-3(a)(1)(A)] in that it has engaged primarily in the business of investing, reinvesting or trading in securities. (Complaint, ¶ 33). The Commission also alleges that Defendant has been an investment company within the meaning of Section 3(a)(1)(C) of the Investment Company Act [15 U.S.C. § 80a-3(a)(1)(C)] in that it has engaged or proposes to engage in the business of investing, reinvesting, owning, holding or trading in securities, and owns or proposes to acquire investment securities having a value exceeding 40 per centum of the value of its total assets (exclusive of Government securities and cash items). (Complaint, ¶ 34). The Commission further alleges that as a result of Defendant's failure to register as an investment company, Defendant's shareholders have been denied the benefits of the Investment Company Act, including several provisions designed to protect them from, among other things, theft, self-dealing, fraud, excessive fees and breach of fiduciary duty. (Complaint, ¶ 3).

2

In its answer, Defendant denied the Commission's allegations that it is an investment company. Thereafter, the Commission served Defendant with discovery seeking, among other things, information and documents relating to Defendant's claim that it is not an investment company within the meaning of the Investment Company Act. The parties had a Rule 26(f) conference and several further communications and discussions regarding Defendant's production of documents and information in response to the Commission's discovery. Defendant informed the Commission that it intended to establish that it was not an investment company by using documents containing alleged trade secrets or confidential commercial information. Defendant contended that several of the Commission's interrogatories and the Commission's Second Request for Production of Documents therefore called for trade secrets or other confidential commercial information which it would not produce without a protective order. The Commission informed Defendant that it could not agree to a protective order because Defendant had not satisfied the Commission that the prerequisites for issuance of a protective order under Rule 26(c)(7) of the Federal Rules of Civil Procedure had been met.

Defendant argues that it is excepted from the definition of an investment company under Section 3(b)(1) of the Investment Company Act because it is primarily engaged in a business or businesses other than that of investing, reinvesting, owning, holding or trading in securities. 15 U.S.C. § 80a-3(b)(1). Defendant claims that it will defeat the Commission's claim that it is an investment company by way of documents and information demonstrating that it is primarily engaged in the manufacture of small household appliances, defense items, and absorbent products. Defendant asserts that the

Commission's requests for production of documents relating to Defendant's claim that it is not an investment company implicate the very heart of its operations, including research and development, design, engineering, marketing, and sales. Defendant claims that responsive documents contain confidential sales, pricing, marketing, product development, manufacturing operations, and potential acquisition information. Defendant contends that such information constitutes "trade secrets or other confidential commercial information" within the meaning of Federal Rule of Civil Procedure 26(c)(7), and that the Court should therefore issue a protective order with regard to these documents.

## ARGUMENT

### I. The Prerequisites For Entry of a Protective Order Are Not Satisfied

#### A. Defendant Has Put Its Purported Trade Secrets At Issue

It is the Defendant, not the Commission, who has put its purported trade secrets and confidential commercial information at issue. The Commission merely seeks production of documents and information relating to Defendant's denials of the Commission's allegations that Defendant is an investment company. The Commission's requests and interrogatories do not on their face seek or require the production of any trade secrets or confidential commercial information. It is Defendant who has chosen to use such information to defend itself, claiming that such information will prove that it is not an investment company within the meaning of the Investment Company Act.

As noted by Defendant, the Commission has adopted a five factor analysis to determine an issuer's primary business for purposes of assessing the issuer's status under the Investment Company Act. The five factors are: (1) the issuer's historical

4

development; (2) its public representations of policy; (3) the activities of its officers and directors; (4) the nature of its present assets; and (5) the sources of its present income. In re Tonopah Mining Co., 26 S.E.C. 426, 1947 WL 26116 (1927).

The Commission does not understand how much of the information that Defendant seeks to keep confidential, i.e. customer pricing requests and contract terms, shipping terms, payment and credit arrangements, product designs, plans, drawings and specifications past and present, product testing information and results, product design and part specifications and plans, tooling guidelines for manufacturing equipment, packaging requirements, and pricing, is necessarily responsive to the Commission's discovery or how it will assist Defendant in proving that Defendant is not an investment company under the five factor Tonopah test. However, Defendant nevertheless represents that it wants to use these documents to defend itself, and in the process, conveniently, prevent the public from having full access to this litigation.

The tradition that litigation is open to the public is of very long standing. Union Oil Co. of California v. Leavell, 220 F.3d 562, 567-68 (7th Cir. 2000). As stated by the Seventh Circuit: "What happens in the halls of government is presumptively public business. Judges deliberate in private but issue public decisions after public argument based on public records. The political branches claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look like fiat, which requires compelling justification." Id. No such compelling justification has been presented by Defendant.

### B. Defendant's Affidavits Do Not Establish That The Documents Contain Confidential Commercial Information

Defendant seeks a protective order pursuant to Federal Rule of Civil Procedure 26(c)(7). Rule 26(c)(7) provides that the Court may, for "good cause shown" make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue expense, including "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(7). To obtain a protective order, Defendant must show that: (1) the interest for which protection is sought is an actual trade secret or other confidential business information protected under the Rule, and (2) there is good cause for the protective order. Andrew Corp. v. Rossi, 180 F.R.D. 338, 340-41 (N.D. Ill. 1998).

The finding of both protectible information and good cause must be based on a particular factual demonstration of trade secrets or confidential commercial information and potential harm, not on conclusory statements. Id., at 340-42; Felling v. Knight, 211 F.R.D. 552, 554 (S.D. Ind. 2003); see also, Baxter International, Inc. v. Abbott Laboratories, Inc., 297 F.3d 544, 547 (7th Cir. 2002). Allegations of general injury are insufficient to constitute good cause; the movant must show that disclosure will cause a clearly defined and serious injury. Id. While determinations of good cause need not always be made on a document by document basis, the Court must satisfy itself that the parties know what a trade secret is and are acting in good faith in deciding which parts of the record are trade secrets. Citizens First National Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 946 (7th Cir. 1999).

6

Here Defendant seeks a protective order for more than 41,000 pages of documents.[1] Defendant has submitted affidavits from several of its employees which it claims establish that the documents at issue contain trade secrets or other confidential commercial information and that good cause exists for entry of a protective order. However, the affidavits submitted in support of Defendant's motion for protective order are insufficient to establish either of these things.

The affidavits are for the most part merely conclusory. The affidavits generally recite that Defendant's sales, pricing, marketing, product development, manufacturing operations, and potential acquisition information is "highly confidential," that Defendant has taken some measures to keep the information confidential, and that Defendant could suffer harm if such information is disclosed to its competitors. However, the affidavits fail to demonstrate what it is about the information that makes it a true trade secret or otherwise confidential commercial information and that a clearly defined and serious injury will result from disclosure of the information.[2] Among other things, the affidavits fail, for the most part, to provide any particularized description of the information at

---

[1] Copies of letters and discovery responses from Defendant's counsel evidencing the number of pages of documents that are being withheld are attached as Exhibit A.

[2] Defendant cites cases holding that documents containing similar types of information were confidential given the manner in which the information was derived and protected by other companies in other industries and the harm that would have been caused to those companies from disclosure of such information. However, the parties in those cases were required to make a specific showing that the particular information sought to be protected was indeed confidential commercial information and that good cause existed for issuance of a protective order. Defendant must make a specific showing that the sales, pricing, marketing, product development, manufacturing operations, and potential acquisition information at issue here should be protected based on the particular nature of that information and the specific harm that will be suffered if it is disclosed. See e.g., Zahran v. Trans Union Corp., No. 01 C 1700, 2002 WL 31010822 (N.D. Ill. Sept. 9, 2002)(Magistrate Keys)(Trans Union's contract terms were not trade secrets or confidential commercial information and there was no good cause for issuance of protective order).

issue, how the allegedly confidential information was derived, the amount of time and money expended to develop the information, what is and is not known to competitors about the information, and whether customers and/or other third parties to whom this information is disclosed are required to keep the information secret. See e.g. IDX Systems Corp. v. Epic Systems Corp., 285 F.3d 581, 583-84 (7th Cir. 2002); Rossi, 180 F.R.D. at 341; Cook v. Boston Scientific Corp., 206 F.R.D. 244 (S.D. Ind. 2001); Kobelco Metal Powder of America, Inc. v. The Energy Cooperative, No. IP 01-0051-C H/K, 2001 WL 1397311, * 3 (S.D. Ind. Oct. 30, 2001). Considered in their entirety, the affidavits show only that Defendant considers nearly everything concerning its business to be confidential but not whether its assertions of confidentiality or harm are actually legitimate. Rossi, 180 F.R.D. at 341.

Further, the affidavits fail to establish that the 41,000 plus pages of documents at issue contain protected information. The affidavits do not state that affiants have reviewed the documents for which Defendant is seeking a protective order, that those documents contain trade secrets or other confidential business information, or that disclosure of the documents at issue will cause Defendant to suffer a competitive injury. Moreover, given the volume of documents being withheld, it is very likely that there are significant portions of these 41,000 pages of documents that contain information that is not confidential. There should not be any restrictions placed on the use and dissemination of material that is not properly the subject of a protective order merely because it is included with or within a document that contains allegedly protected information.

### C. The Balancing of Interests Weighs Against Issuance of A Protective Order

In determining whether "good cause" exists, the Court must balance the harm to the party seeking the protective order and the importance of disclosure to the public. Felling, 211 F.R.D. at 254-55; Doe v. Marsalis, 202 F.R.D. 233, 237-38 (N.D. Ill. 2001). Here, a federal agency is suing a New York Stock Exchange traded public company for violations of the Investment Company Act. Because of the nature of this case and the fact that the Commission is one of the parties, this case is of broad public interest and of particularly great interest to Defendant's shareholders. The public interest in this case is not merely theoretical. Copies of certain newspaper articles relating to this case or issues involved in it are attached as Exhibit B.

In cases where the government is a party to the litigation, the threshold for issuing a protective order is particularly heightened. FTC v. Standard Financial Management Corp., 830 F.2d 404, 410 (1st Cir. 1987); see also Smith v. United States District Court for the Southern District of Illinois, 956 F.2d 647, 650 (7th Cir. 1992) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party; in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." (quoting from Standard Financial Management, 830 F.2d at 410)). When a government agency is a party to the litigation, the people have a right to know what is being done in their name and the matters at issue are, therefore, of a legitimate and significant public concern. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 788 (3rd Cir. 1994).

The Commission is a federal agency created to protect the investing public by, among other things, investigating and prosecuting civil law enforcement actions like this one. One of the Commission's primary obligations and goals is to promote full disclosure of information to investors that will allow them to make informed investment decisions. The investing public and Defendant's shareholders have a right to know all the facts and circumstances surrounding their investments, including the basis for Defendant's claim that it is not an investment company as alleged by the Commission. The Court's ruling will likewise affect Defendant's thousands of shareholders. The public interest in this litigation outweighs the alleged but undemonstrated potential harm to Defendant if its purported confidential commercial information is disclosed.

## II.     The Proposed Protective Order Is Unduly Restrictive

### A.     The Proposed Protective Order Limits Public Access To Judicial Proceedings And The Decision Making Process

The protective order is not limited to pretrial discovery. In its protective order, Defendant proposes that any information, writing or other material that has been marked or otherwise designated "Confidential" and which is identified as an Exhibit in connection with testimony given in this litigation, or is used or submitted to the Court in connection with any filing or proceeding in this litigation must be filed under seal with the clerk of the court. (Protective Order, ¶ 10).

Any restrictions placed by the Court on the use of purportedly confidential commercial information during discovery should not extend to the judicial decision making process. Leavell, 220 F.3d at 567-68. This is particularly true here where a federal agency is suing a public company for violations of the federal securities laws.

This litigation should not be kept from the public view because Defendant has chosen to interject purportedly confidential information into it.

Should the Court nonetheless determine that Defendant's purported confidential commercial information is entitled to protection, any protective order issued should indicate that the parties must file public pleadings and briefs but may file sealed supplements if necessary to discuss in detail materials subject to the protective order. Id. As stated by the Seventh Circuit, "Litigation about trade secrets is regularly conducted in public; the district court seals only the *secrets* (and writes an opinion omitting secret details)…" Id., at 567; Pepsico, Inc. v. Redmond, 46 F.3d 29, 31 (7th Cir. 1995). In addition, the protective order must provide that any interested member of the public can challenge the secreting of particular documents pursuant to the protective order. Citizen's Utility, 178 F.3d at 946. Moreover, any trial in this case should be open to the public.

### B. The Proposed Order Interferes With the Commission's Ability To Comply With Its Statutory Obligations

Should the Court determine that a protective order is appropriate, Defendant's proposed protective order is unduly restrictive in limiting access to the protected materials only to counsel of record for the parties herein and attorneys or other persons employed by such counsel of record or by any of the parties, and who assist, supervise or monitor the prosecution or defense of this case. (Protective Order, ¶ 5). Counsel for the Commission must be free to and is often required to consult with attorneys, accountants and other persons employed in other Divisions of the Commission and with the Commission itself when seeking to make litigation decisions or to obtain Commission approval of certain litigation decisions. Although these persons do not directly assist,

11

supervise or monitor the prosecution or defense of this case, their input is an integral part of the Commission decision-making progress. The fact that dissemination of defendant's commercial information might be harmful if disclosed to Defendant's competitors is no justification for keeping the information from being the subject of privileged and confidential communications between employees of the Commission.

The proposed protective order is also unduly restrictive in requiring that the information or documents be used solely for the purposes of this litigation. (Protective Order, ¶ 5). Among other things, the Commission's job is to investigate whether any person has violated or is about to violate the federal securities laws or any rules, regulations or orders thereunder and prosecute persons who have engaged or are about to engage in such violations. See Section 42(a) of the Investment Company Act [15 U.S.C. §80a-41(a)]; Sections 20(a) and (b) of the Securities Act of 1933 [15 U.S.C. §§ 77t(a), (b)]; Sections 21(a)(1) and (d)(1) of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78u(a)(1) and (d)(1)]. Should the documents produced reveal additional violations of the securities laws by Defendant or violations of the securities laws by others with whom Defendant does or proposes to do business, the Commission should not be precluded from using the information obtained in subsequent investigations or litigation.

In addition, the federal securities laws specifically authorize the Commission to share information with federal and state civil and criminal authorities. See Section 42(d) of the Investment Company Act [15 U.S.C. §80a-41(d)]; Section 20(b) of the Securities Act of 1933 [15 U.S.C. § 77t(b)]; Sections 21(d)(1) and 24(c) of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78u(d)(1), 78x(c)]; and Rule 24c-1(b) thereunder [17 C.F.R. 240.24c-1(b)]. To prevent the sharing of information with other civil and criminal

authorities impedes the legitimate goals of protecting the investing public and prosecuting wrongdoers.

The Commission routinely uses documents and information produced to it during investigations and litigation to fulfill its obligations as a governmental agency and to the investing public. A list of these routine uses is included in the Commission's Form 1662, "Supplemental Information For Persons Requested To Supply Information Voluntarily Or Pursuant To A Commission Subpoena" which is attached as Exhibit C. The Commission should be permitted to utilize the information obtained pursuant to any protective order in accordance with these routine uses. A protective order which limits these uses may interfere with the Commission's ability to fulfill its governmental and investor protection functions.

## CONCLUSION

For the reasons stated above, the requested protective order would unduly restrict the public's right of access to this litigation and Defendant's motion should be denied. Should the Court nonetheless determine that a protective order is appropriate, the proposed restrictions on the Commission's use of such information should be modified to permit the Commission to use such materials as is necessary to fulfill its agency responsibilities and serve the public interest.

Date:   January 23, 2004

Respectfully submitted,

_____
One of the Attorneys for Plaintiff
Kathryn A. Pyszka
Richard J. Gorman
Securities and Exchange Commission
175 W. Jackson Blvd., Ste. 900
Chicago, Illinois 60606
(312) 353-7390
(312) 353-7398 (fax)

## **CERTIFICATE OF SERVICE**

I, Richard J. Gorman, hereby certify that I caused true and correct copies of the foregoing PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER to be served via hand delivery on the following persons:

Kenneth G. Schuler, Esq.
Latham & Watkins
233 South Wacker Drive, Ste. 5800
Chicago, Illinois 60606

_____
Richard J. Gorman

January 23, 2004

# SEE CASE FILE FOR EXHIBITS