IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | Case No. 02 C 5027 |
|---|---|---|
| Plaintiff, | ) ) ) | Honorable Charles R. Norgle |
| v. | ) ) | |
| NATIONAL PRESTO INDUSTRIES, INC., | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Plaintiff United States Securities and Exchange Commission ("SEC," or the "Commission") and Defendant National Presto Industries, Inc. ("Presto") have filed cross Motions for Summary Judgment. For the following reasons, the SEC's Motion is granted, and Presto's Motion is denied.

### I. INTRODUCTION[1]

**A. Facts**

Presto is a publicly traded company based in Eau Claire, Wisconsin. During the time period relevant to this case (1994-2003), Presto's common stock has been registered with the SEC, and traded on the New York Stock Exchange. The SEC is the federal agency responsible for enforcing federal securities laws, including the Investment Company Act (15 U.S.C. § 80a-1 et seq.).

---

[1] The facts are taken from the parties Local Rule 56.1 Statements, and Presto's website. Disputed facts are noted within the text. Details regarding certain types of securities are taken from the websites of various financial institutions.

1

Presto was founded in 1905 as Northwestern Steel and Iron Works, and initially manufactured pressure canners for commercial canneries, hotel use, and home canning. By 1917, Presto had expanded its manufacturing business to include cast aluminum cooking utensils. In 1939, Presto began to manufacture pressure cookers and other small household appliances. During World War II, Presto converted its production facilities so that it could produce war materials for the United States military. Following the War, Presto resumed production of its line of household appliances. In 1969, Presto was admitted to the New York Stock Exchange.

In the late 1970's, and the early 1980's, Presto had accumulated cash through the sale of a number of its subsidiaries. Presto then used this cash to purchase and hold securities. Presto did not distribute this cash to shareholders as dividends, reinvest in its manufacturing business, or acquire other operating businesses. In approximately 1979, Presto created the National Holding Investment Company ("Holding") as a subsidiary. Holding then proceeded to invest cash Presto held in excess of its operating needs. Holding receives its funding mostly from the sale of Presto subsidiaries, and the reinvestment of these funds. Holding is thus the investment arm of Presto.

The manufacturing and sales portion of Presto's business has steadily decreased since 1979. At the end of 1979, Presto had a sales force of approximately sixty employees, and over 1,300 total employees. By the end of 1994, Presto had a sales force of nineteen, and 674 total employees. In 2002, Presto closed its manufacturing facilities in Mississippi and Texas, and discontinued manufacturing small household appliances. At the conclusion of 2004, Presto had a sales force of nine, and only 551 total employees.

Presto presently holds assets in the form of cash, accounts receivable, inventory, property, equipment, and securities. Presto's securities portfolio consists mostly of Variable Rate Demand

Notes ("VRDNs") and Pre-refunded Municipal Bonds ("PRMBs").

> A Variable Rate Demand Note (VRDN), also called a "low-floater" or "seven day floater," is a long term, taxable, or tax-exempt bond issued on a variable rate basis that can be tendered for purchase at par whenever rates reset upon seven-day notice by the investor. The bonds tendered are then resold by the remarketing agent in the secondary market to other investors. VRDNs can be converted to a long term fixed rate security upon appropriate notice by the issuer. . . Bond maturity is up to 15 years.

Http://www.wachovia.com/corp_inst/page/printer/0,,7_26_252_932,00.html. VRDNs are typically "issued by a municipality or public agenc[y] or [other] authorit[y]," and have "[e]xcellent after tax yields," and "[h]igh credit quality." Http://corp.bankofamerica.com/public/products/investsolutions/taxadvantaged.jsp.

> Similar to the refinancing of a home mortgage, pre-refunded municipal bonds are created when municipalities borrow money at lower interest rates to refinance municipal bonds issued when interest rates were higher. Unlike home mortgages, however, the original municipal bond issue remains in existence according to the terms of its original issuance. Once the refinancing is completed, the municipality uses the proceeds to buy a portfolio of U.S. Treasury securities; the interest and principal of which are used to retire the original issue to its call or maturity date.

Http://www.morganstanleyindividual.com/markets/bondcenter/school/prere.pdf. "Pre-refunded municipal bonds are among the highest quality municipal bonds available." Id.

The SEC has examined Presto's and Holding's financial records for the years 1994-2003, in attempting to determine whether Presto must register with the Commission as an investment company. The SEC has examined, *inter alia*, Presto's consolidated financial statements, Presto's and Holding's details and summary of investments (F1-A Reports), Presto's and Holding's common stock holdings, and Presto's Annual Reports and Forms 10-K. The SEC's analysis of these records showed that the percentages of Presto's total assets represented by investment securities, exclusive of Government Securities and cash items on an unconsolidated basis, were

as follows: 86.30% (1994), 86.04% (1995), 90.58% (1996), 89.16% (1997), 92.21% (1998), 80.97% (1999), 74.18% (2000), 63.37% (2001), 61.75% (2002), and 62.23% (2003). The percentages of Holding's total assets represented by investment securities, exclusive of Government Securities and cash items on an unconsolidated basis, were as follows: 81.85% (1994), 80.09% (1995), 77.71% (1996), 77.74% (1997), 77.62% (1998), 76.99% (1999), 74.08% (2000), 70.35% (2001), 69.86% (2002), and 67.96% (2003).

## B. Procedural History

The SEC filed its First Amended Complaint in the Northern District of Illinois on July 26, 2002. The Commission alleges that since at least 1994, Presto has been operating as an unregistered investment company in violation of Section 7(a) of the Investment Company Act of 1940 (15 U.S.C. § 80a-1 et seq.) (the "Act"). The SEC seeks a court Order requiring Presto to either register with the SEC as an investment company, restructure its securities holdings so as to come into compliance with the Act, or take any such other steps as may be required to come into compliance with the Act. The SEC also seeks a Permanent Injunction enjoining Presto from selling or purchasing any securities, controlling any investment company which does these things, or otherwise violating the Act.

On August 22, 2005, the SEC and Presto filed cross Motions for Summary Judgment. These Motions are fully briefed and before the court.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The

nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. FED. R. CIV. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003)(citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. The Statutory Definition of an Investment Company

### *1. A Brief Legislative History of the Investment Company Act*

In 1935, Congress requested that the SEC undertake a study of investment trusts and investment companies to determine whether "federal oversight of these investment media" was needed, and what the "regulatory parameters for [such] legislation" might be. Sydney H. Mendelsohn, et al., *Status Seeking: Resolving the Status of Inadvertent Investment Companies*, 38 BUS. LAW 193, 196-97 (1982). In response to this request, the SEC submitted a five part report (with six supplemental reports) to Congress. Id. The Senate also held four weeks of hearings on investment company legislation. Thomas P. Lemke, et al., REGULATION OF INVESTMENT COMPANIES § 2.04 (Release 18, Sept. 2005). The Investment Company Act was signed into law on August 22, 1940. Id.

The Act is broadly intended to minimize conflicts of interest that can arise in complex securities investment operations. Http://www.sec.gov/about/laws.shtml. The Act requires, *inter alia*, that companies primarily engaged in securities investments (i.e. investment companies) disclose their financial condition and investment policies to investors when stock is initially sold and, subsequently, on a regular basis. Id. The Act also indicates that these companies may not engage in the purchasing or selling of securities unless they register as an investment company with the SEC. 15 U.S.C. § 80a-7(a); 15 U.S.C. § 80a-8.

### *2. The Orthodox Investment Company*

Section 3(a)(1)(A) of the Act (15 U.S.C. § 80a-3(a)(1)(A)) defines what some commentators have called "orthodox" or "typical" investment companies. See Lemke, supra, at § 3.01-02. An "orthodox" investment company is defined as "any issuer which is or holds itself

out as being engaged primarily, or proposes to engage primarily, in the business of investing, reinvesting, or trading in securities." 15 U.S.C. § 80a-3(a)(1)(A).

> This definition generally applies to traditional investment companies, i.e. companies engaged in the business of issuing securities and obtaining capital with the express purpose of purchasing securities - usually stocks and bonds - on behalf of their shareholders. To come within this definition, a company must be an "issuer," i.e., it must issue or propose to issue a security or have outstanding any security which it has issued.

Lemke, supra, at § 3.02.

In contrast to the inadvertent investment company, see Part II.B.3. below, the question of an orthodox investment company's primary business engagement is usually not complicated. Companies whose everyday business is "active portfolio management," and which have "no business other than acquiring and holding securities and actively promote [themselves] as [] investment vehicle[s]" fall under the rubric of § 80a-3(a)(1)(A). Id.

### 3. The Inadvertent Investment Company

Section 3(a)(1)(C) of the Act (15 U.S.C. § 80a-3(a)(1)(C)) defines what are sometimes called "inadvertent investment companies." Id. at § 3.03. An "inadvertent investment company" is defined as

> any issuer which is engaged or proposes to engage in the business of investing, reinvesting, owning, holding, or trading in securities, and owns or proposes to acquire investment securities having a value exceeding 40 percentum of the value of such issuer's total assets (exclusive of Government securities and cash items) on an unconsolidated basis.

15 U.S.C. § 80a-3(a)(1)(C).

By definition, no company intentionally sets out to become an inadvertent investment company. Events, however, may unfold so as to change an operating company into an

7

investment company without the intent of company management.

> The typical inadvertent investment company's problems begin when some or all of its operating properties are sold and the company cannot, or does not wish to invest the proceeds in its own business or a new operating business. For one reason or another . . . management does not want to distribute the money to security holders. It invests the surplus funds in securities. If the securities come to represent a substantial portion of the company's assets, the company may be required to register under the act.

Edmund H. Kerr, *The Inadvertent Investment Company: Section 3(a)(3) of the Investment Company Act*, 12 STAN. L. REV. 29, 29 (1959-60).

To be an inadvertent investment company within the meaning of § 3(a)(1)(C), a company must satisfy two elements. "First, a company must be an issuer that is engaged or proposes to engage in the business of investing, reinvesting, owning, holding or trading in securities." Lemke, supra, at § 3.03. The statutory language indicates that companies with both active and inactive portfolios satisfy this element. Id.; In the Matter of the Atlantic Coast Line Co., 11 S.E.C. 661, 667-668 (1942); Kerr, supra, at 34. "Second, the company must own or propose to acquire 'investment securities' with a value exceeding 40% of its total assets on an *unconsolidated* basis." Lemke, supra, § 3.03. The requirement that a company's assets be calculated on an unconsolidated basis means that the assets of majority owned subsidiaries are not to be considered an asset of the parent company. The following types of securities are excluded from the statutory definition of "investment securities": government securities, securities of employees' securities companies, and securities of non-investment company majority-owned subsidiaries. 15 U.S.C. § 80a-3(a)(2); see also Lemke, supra, § 3.03. Government securities and cash items are excluded from total assets. 15 U.S.C. § 80a-3(a)(1)(C). The key to the second element of § 3(a)(1)(C), however, is the 40% test. If over 40%

of an issuer's assets are investment securities, that issuer is an investment company (certain statutory exceptions to this general rule apply - see Part II.B.4.).

Companies generally will take steps to avoid becoming an inadvertent investment company, as these companies must register with the SEC, and comply with SEC regulations. Such companies must then "conform[] to a statute that demands strict adherence to structural and transactional limitations often not conducive to the efficient operations of a noninvestment company business, or risking a [SEC] enforcement action, as well as the invalidity of any contracts contravening the Act's pervasive regulatory scheme." Mendelsohn, supra, at 195; see also Kerrr, supra, at 30 (outlining some of the rules and regulations investment companies become subject to upon registration with the SEC).

### *4. Statutory Exceptions to the Inadvertent Investment Company Rule*

Congress provided several statutory exemptions from Rule 3(a)(1)(C). 15 U.S.C. § 80a-3(b)(1) provides: "none of the following persons is an investment company within the meaning of this title: any issuer primarily engaged, directly or through a wholly-owned subsidiary or subsidiaries, in a business or businesses other than that of investing, reinvesting, owning, holding, or trading in securities." 15 U.S.C. § 80a-3(b)(2) provides that "none of the following persons is an investment company within the meaning of this title: any issuer which the Commission, upon application by such issuer, finds and by order declares to be primarily engaged in a business or businesses other than that of investing, reinvesting, owning, holding, or trading in securities either directly or (A) through majority-owned subsidiaries or (B) through controlled companies conducting similar types of businesses."

Companies that fall under the statutory definition of an inadvertent investment company,

but who are "primarily engaged" in something other than the investment business, are thus not investment companies. The following five factor test is commonly used to determine a company's primary engagement: the company's historical development, its public representations of policy, the investment activities of its officers and directors, the nature of its assets, and the sources of its income. In the Matter of the Tonopah Mining Co., 26 S.E.C. 426 (1947); see also Lemke, supra, at § 3.05.

In addition, Rule 3a-1 of the Act provides that a company that meets the statutory definition of an investment company, but has no more than 45% of its assets in securities, and receives no more than 45% of its income from investments, is not an investment company. 17 C.F.R. § 270.3a-1; see also Lemke, supra, at § 3.06 (noting that this exception provides a "safe harbor" for companies that might otherwise be forced to register with the SEC).

### C. National Presto is an Inadvertent Investment Company

#### 1. *Presto fails the 40% test*

By statute, an issuer is an investment company if it is in the business of, *inter alia*, investing, holding, or trading in securities, and the value of the securities it holds exceeds 40% of its total assets. 15 U.S.C. § 80a-3(a)(1)(C). The essential issue before the court is therefore whether the value of Presto's securities exceeds 40% of its total assets. Presto contends, however, that the majority of the securities it owns (VRDNs and PRMBs) do not meet the statutory definition of a "security," and should therefore be excluded from these calculations. Before reaching the essential issue in this case, the court must therefore determine whether the securities in question are in fact "securities" as defined by the Act.

The Act defines a "security" as, *inter alia*, "any note, stock, treasury stock, security

10

future, [or] bond . . . ." 15 U.S.C. § 80a-2(a)(36). "Investment securities" are defined as "all securities except (A) Government securities, (B) securities issued by employees' securities companies, and (C) securities issued by majority-owned subsidiaries of the owner which (i) are not investment companies, and (ii) are not relying on the exception from the definition of investment company in paragraph (1) or (7) of subsection (c)." 15 U.S.C. § 80a-3(a)(2).

VRDNs are long-term bonds that can take as long as fifteen years to mature. Presto asserts that because these bonds may be tendered for purchase at par whenever rates reset, they are liquid, or "cash-like," and are therefore not true "securities." However, VRDNs are clearly "bonds" under 15 U.S.C. § 80a-2(a)(36). In addition, VRDNs meet none of the statutory exceptions promulgated in § 80a-3(a)(2). VRDNs are therefore securities within the meaning of the Act.

PRMBs are municipal bonds. Although these bonds are issued by municipalities, they are neither issued by nor guaranteed as to principal by the United States government, a person acting as an instrumentality of the United States government, or a certificate of deposit for the United States government. See 15 U.S.C. § 80a-2(a)(16). PRMBs are thus not government securities, nor do they meet any of the other statutory exceptions outlined in 15 U.S.C. § 80a-3(a)(2). PRMBs are therefore also securities within the meaning of the Act. VRDNs and PRMBs must therefore be included in determining whether the value of Presto's securities exceeds 40% of its total assets.

Taking into account Presto's VRDNs and PRMBs, investment securities as a percentage of Presto's total assets, exclusive of government securities and cash items on an unconsolidated basis, see 15 U.S.C. § 80a-3(a)(1)(C), are as follows: 86.30% (1994), 86.04% (1995), 90.58%

11

(1996), 89.16% (1997), 92.21% (1998), 80.97% (1999), 74.18% (2000), 63.37% (2001), 61.75% (2002), 62.23% (2003). Investment securities as a percentage of Holding's total assets, exclusive of government securities and cash items on an unconsolidated basis, see 15 U.S.C. § 80a-3(a)(1)(C), are as follows: 81.85% (1994), 80.09% (1995), 77.71% (1996), 77.74% (1997), 77.62% (1998), 76.99% (1999), 74.08% (2000), 70.35% (2001), 69.86% (2002), 67.96%(2003). Investment securities as a percentage of Presto's total assets as adjusted for fair market value, exclusive of government securities and cash items on an unconsolidated basis, see 15 U.S.C. § 80a-3(a)(1)(C), are as follows: 85.84% (1994), 84.82% (1995), 89.71% (1996), 89.05% (1997), 92.74% (1998), 80.28% (1999), 72.07% (2000), 58.80% (2001), 58.07% (2002), 62.25% (2003). Investment securities as a percentage of Holding's total assets as adjusted for fair market value, exclusive of government securities and cash items on an unconsolidated basis, see 15 U.S.C. § 80a-3(a)(1)(C), are as follows: 85.08% (1994), 88.46% (1995), 87.03% (1996), 78.77% (1997), 71.36% (1998), 80.14% (1999), 83.32% (2000), 86.25% (2001), 81.98% (2002), 67.89% (2003). There therefore is no genuine issue of material fact as to whether investment securities account for more than 40% of both Presto's and Holding's total assets during the relevant period.

### 2. *No statutory exception applies to Presto*

Under Rule 3a-1 of the Act, a company that meets the statutory definition of an investment company, but has no more than 45% of its assets in securities, and receives no more than 45% of its income from investments, is not an investment company. 17 C.F.R. § 270.3a-1. By statute, the percentage of a company's assets that are securities is calculated on an unconsolidated basis, "except that the issuer shall consolidate its financial statements with the financial statements of any wholly-owned subsidiaries." Id. Since all of Presto's subsidiaries are

12

wholly-owned, these calculations are to be performed on a consolidated basis.

Investment securities as a percentage of Presto's total assets, exclusive of government securities and cash items on a consolidated basis, are as follows: 75.11% (1994), 71.45% (1995), 79.77% (1996), 79.19% (1997), 81.70% (1998), 79.28% (1999), 76.66% (2000), 66.15% (2001), 68.24% (2002), 67.32% (2003). Investment securities as a percentage of Holding's total assets, exclusive of government securities and cash items on a consolidated basis, are as follows: 77.71% (1994), 77.96% (1995), 75.65% (1996), 69.12% (1997), 75.58% (1998), 65.59% (1999), 55.36% (2000), 49.88% (2001), 50.75% (2002), 48.79% (2003). Investment securities as a percentage of Presto's total assets as adjusted for fair market value, exclusive of government securities and cash items on a consolidated basis, are as follows: 77.76% (1994), 65.90% (1995), 72.91% (1996), 78.25% (1997), 89.00% (1998), 76.41% (1999), 69.31% (2000), 56.69% (2001), 59.69% (2002), 67.39% (2003). Investment securities as a percentage of Holding's total assets as adjusted for fair market value, exclusive of government securities and cash items on a consolidated basis, are as follows: 77.76% (1994), 65.90% (1995), 72.91% (1996), 78.25% (1997), 89.00% (1998), 76.41% (1999), 69.31% (2000), 56.69% (2001), 59.69% (2002), 67.39% (2003). Presto therefore does not meet the statutory exemption identified in Rule 3a-1 of the Act.

Under Rule 3(b)(1) of the Act, issuers "primarily engaged" in a business other than investing are not investment companies. 15 U.S.C. § 80a-3(b)(1). A five factor test is used to determine a company's primary engagement: the company's historical development, its public representations of policy, the investment activities of its officers and directors, the nature of its assets, and the sources of its income. Tonopah, 26 S.E.C. at 426. The nature of the company's assets and the sources of its income are the most important of the five factors. Id. at 430-32.

As the court has already discussed, the nature of Presto's assets is that these assets are mostly investment securities. See II.C.1. Investment securities as a percentage of Presto's assets range from approximately 61% to 92% during the relevant time periods. Id. Presto's interest income from marketable securities and cash and cash equivalents ranges from 27% to 133% of Presto's net earnings during the relevant time periods. The nature of Presto's assets and income therefore strongly indicates that Presto's primary engagement is in investment securities.

The other three factors of the primary engagement test also indicate that Presto is an investment company. Presto's historic development shows that over time, Presto has changed from a company primarily engaged in manufacturing to a company primarily engaged in the business of investing in securities. Prior to World War II, Presto manufactured housewares and small appliances. Presto has ceased manufacturing these items, has closed manufacturing facilities, and has used its excess cash primarily to purchase and hold securities. Presto has publicly represented that it is primarily engaged in investing in securities in its Forms 10-K and Annual Reports. These Forms indicate that Presto buys and sells millions of dollars worth of securities every year, and that these securities make up a substantial percentage of its assets. Finally, Presto's officers and directors govern and closely monitor Presto's investment activities. Presto's treasurer Randy Lieble has routinely purchased and sold securities for Presto under the supervision of Melvin Cohen, Presto's Chairman Emeritus, and Maryjo Cohen, Presto's CEO.

### 3. Presto is therefore an investment company under 15 U.S.C. § 80a-3(a)(1)(C)

The percentage of Presto's assets which are investment securities is clearly over 40% for the time period in question. Presto does not fall under the 45%, or "safe harbor" exception to 15 U.S.C. § 80a-3(a)(1)(C). Presto is not primarily engaged in a business other than investing so as

to fall under the statutory exception promulgated in 15 U.S.C. § 80a-3(b)(1). There is therefore no genuine issue of material fact as to whether Presto is an investment company under the provisions of 15 U.S.C. § 80a-3(a)(1)(C).

## III. CONCLUSION

For the foregoing reasons, the SEC's Motion for Summary Judgment is granted, and Presto's Motion for Summary Judgment is denied. The SEC is directed to submit a proposed Order requiring Presto to comply with Section 7 of the Act, and a proposed Order of Permanent Injunction, by November 30, 2005.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge

United States District Court

DATED: October 31, 2005.